Hans BOTHKE, Plaintiff–Appellant,

v.

**FLUOR ENGINEERS &
CONSTRUCTORS, INC.,
et al., Defendants,**

and

**W.J. Terry, Defendant–Appellee.**

No. 85–6361.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1987.

Decided Dec. 16, 1987.

Hans Bothke, Orange, Cal., for plaintiff-appellant.

Michael L. Paup, Chief Appellate Section, Elaine F. Ferris, Dept. of Justice, and Roger M. Olson, Washington, D.C. for defendant-appellee.

Before FERGUSON, NELSON and BEEZER, Circuit Judges.

NELSON, Circuit Judge:

This case has a protracted administrative and judicial history and is before this court for the third time. Hans Bothke, a pro se plaintiff, brought a *Bivens*[1] action alleging that an IRS agent, defendant W.J. Terry, violated his constitutional rights in conjunction with an IRS levy on his wages for nonpayment of taxes allegedly due in 1977. He appeals from the district court's entry of summary judgment against him on the basis of defendant Terry's qualified immunity. We affirm.

A brief description of the applicable statutory provisions is in order. Once the IRS determines that there is a payment deficiency with respect to a taxpayer's income tax return, it is authorized to send a notice of such deficiency to the taxpayer. 26 U.S.C. § 6212(a) (1982)[2]. Within ninety days after the notice is mailed, the taxpayer may file a petition with the United States Tax Court for a redetermination of the deficiency. *Id.* at § 6213(a). However, if the amount due exceeds the amount reflected on the taxpayer's return merely because of "a mathematical or clerical error appearing on the return," the IRS's notice to the taxpayer "shall not be considered as a notice of deficiency" entitling the taxpayer to petition the Tax Court for a redetermination. *Id.* at § 6213(b)(1).[3] Within sixty days after a notice of mathematical or clerical error is sent, the taxpayer may request an abatement of any assessment in the notice, in which event the IRS's reassessment of the taxpayer's liability is subject to the notice of deficiency procedures provided by §§ 6212 and 6213(a). *Id.* at § 6213(b)(2)(A). The IRS may not commence a levy or court proceeding to collect the assessment during the sixty-day period in which the taxpayer is entitled to request an abatement. *Id.* at § 6213(b)(2)(B).[4]

## FACTUAL AND PROCEDURAL BACKGROUND

In April, 1978, Bothke filed a timely personal income tax return for the 1977 taxable year. However, on every line except that corresponding to the amount to be refunded, he entered asterisks in lieu of numerical calculations. Bothke entered $1,154.62 as the refund due, which amount corresponded to the amount of taxes withheld by his employer as reflected on the W–2 form submitted with the return. Bothke attached a number of documents to his return, including an affidavit and a memorandum of points and authorities. According to these documents, the IRS had violated Bothke's constitutional right to due process in conjunction with its handling of his income tax return for 1976. Bothke raised numerous constitutional grounds in defense of his refusal to provide more information on his 1977 return, and he claimed that he "had no taxable income pursuant to law and court order in the year of 1977."

The IRS service center in Fresno reviewed Bothke's return, and on March 5, 1979, sent him a notice of "Correction to Arithmetic." *See* 26 U.S.C. § 6213(g)(2)(D), quoted *supra* at note 3. The notice stated that, "based on the information received, [the IRS has] adjusted your return accordingly," and that the balance due from Bothke (after adding penalties and interest and subtracting employer withholdings) was $6,177.87. The notice further stated to "[p]lease let us know if you believe the balance due is incorrect for reasons other than uncredited payments."

Bothke responded on March 15, 1979, with a four-page "Protest and Objection," in which he complained that the "Correc-

1. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 619 (1971).

2. References herein to Title 26 are to the Internal Revenue Code of 1954, as amended and in effect in 1979, the year in which the events relevant to this action occurred.

3. The term "mathematical or clerical error" is defined to include "an omission of information which is required to be supplied on the return

to substantiate an entry on the return." *Id.* at § 6213(g)(2)(D).

4. Additionally, the IRS is statutorily authorized to levy on a taxpayer's property to collect an assessment only if the taxpayer is liable for the tax and the IRS has given the taxpayer notice of its intention to levy no less than ten days before the levy. *Id.* at § 6331(a).

tion to Arithmetic" was "not signed, not authenticated, not verified, not trustworthy, nor reliable," unexecuted, without effect, deceptive, in violation of his constitutional right to due process, and failed to apprise Bothke of what information the IRS had relied upon in arriving at the balance due. Bothke also contended that the penalty imposition was unlawful, and he demanded that the IRS answer an attached set of interrogatories within fifteen days or face legal action.

On May 2, 1979, Fredric Perdue of the Fresno IRS service center sent Bothke a letter which stated that "this is your legal notice that your claim [for $1,154.62] is disallowed." Perdue characterized Bothke's claim as based on Bothke's "view of certain tax laws being unconstitutional" and advised Bothke that he could challenge the IRS's disallowance of his claim by bringing suit in federal court. On June 6, 1979, approximately sixty days after the IRS had sent the "Correction to Arithmetic" to Bothke, Mr. S. Espinosa, manager of the IRS taxpayer contact unit in Santa Ana, mailed to Bothke a ten-day notice of the IRS's intent to levy unless Bothke paid the balance due.

On June 14, 1979, Bothke wrote to Perdue in Fresno and sent a copy of the correspondence to Espinosa in Santa Ana. Bothke denied Perdue's contention that he was challenging the constitutionality of the tax laws. Bothke stated that his record showed he was "claim[ing] in good faith [his] constitutional right to procedural due process." He objected to Espinosa's letter of June 6 because it did not attest to the validity of the amount claimed due. As soon as the IRS was willing to comply with the law, Bothke wrote, "please schedule a hearing at which we can determine in good faith further steps which should result in the filing of [Bothke's] amended return for the year 1977."

On August 3, 1979, Bothke's case was turned over to defendant Terry, an IRS revenue officer working in the Santa Ana collection division. She was provided with Bothke's file and a Tax Delinquent Account (TDA), a one-page IRS form showing some

history of the case. The file, however, did not include a copy of Bothke's tax return, and Terry requested that Fresno provide her with a copy.

Terry twice submitted a "Recommendation for Nonfiling of Notice of Tax Lien." She wrote that "[b]ecause of the sensitivity of the case, it is in best interest not to file F[ederal] T[ax] L[ien] until extensive research completed on T[ax] P[ayer] claims." According to Terry's notes on the TDA History Record, she "[w]anted to have a copy [of Bothke's return] before seeing T[ax] P[ayer] because of delicacy [blank] of the situation." During this litigation, Terry has testified that she considered this case "sensitiv[e]" because of the volume of correspondence between the IRS and Bothke.

On November 20, 1979, Terry noted on the TDA History Record that, because of a computer error, she had still not received a copy of Bothke's return. The next day, without having seen the return, she went to Bothke's residence. Bothke was not home, so Terry left her card and a message for him to call her. Bothke telephoned Terry later the same day, and according to Terry's notes on the TDA History Record, she "demanded F[ull] P[ayment]." Bothke responded that "you (the IRS) violated every one of my rights, you (the IRS) committed perjury." Terry's notes reflect that Bothke repeated his complaints set forth in his earlier letters to Perdue and Espinosa, that she explained that the taxes needed to be paid, and that "[t]here was nothing more to say."

On November 26, Terry served a wage levy on Bothke's employer, and the levy was executed on November 30 in the amount of $3,415.43. On November 29, one day before the levy was executed, Terry received Bothke's "Objection to Notice of Levy" and accompanying affidavit, which among other things stated that the levy violated Bothke's right to due process because he had not been afforded a notice of deficiency pursuant to 26 U.S.C. § 6212(a).

Bothke resigned from his job to prevent further levies on his wages, then filed an

amended 1977 return reflecting dollar amounts rather than asterisks and indicating that a refund was due. When Bothke filed suit against another IRS agent in conjunction with a different levy on Bothke's property, the IRS elected as a policy matter to abate any then-existing assessments and to release its liens with respect to Bothke's 1977 taxes.

In October, 1980, Bothke filed suit against Terry, alleging violations of his statutory and constitutional rights.[5] Bothke's complaint alleged that he had never received a notice of deficiency, as required by 26 U.S.C. §§ 6212 and 6213, and that Terry had "willfully and knowingly" issued a "spurious" notice of levy on his property. The complaint stated that Terry's actions constituted a "malicious abuse of discretion" and that Terry had acted "in bad faith [and with] bad motive." Bothke alleged that he warned Terry that she was violating his statutory rights, but that Terry thereafter had "unlawfully and maliciously circumvented" Bothke's statutory rights by inducing his employer with the "spurious" levy to deprive Bothke of his property. Bothke further alleged that his employer had "intentionally and maliciously" and recklessly conspired with Terry to deprive Bothke of his property in violation of 26 U.S.C. § 6213(a). As a result of the defendants' conduct, claimed Bothke, he had suffered "emotional distress, embarrassment, humiliation, mental anguish, and loss of peace of mind." Bothke sought $100,000 in compensatory damages and $150,000 in punitive damages from Terry.

## 1. *Bothke I.*

On March 22, 1981, the district court adopted the recommendation of a magistrate and entered summary judgment for Terry on the ground that she was either absolutely or qualifiedly immune because she had acted in subjective good faith. On appeal, this court concluded that Terry was only entitled to qualified immunity and that the district court had failed to assess Terry's objective good faith. *Bothke v. Fluor*

*Engineers & Constructors, Inc.,* 713 F.2d 1405, 1413 (9th Cir.1983) (*Bothke I*), vacated, 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984). We observed that the Supreme Court had recently revised the summary judgment test for qualified immunity, making a government official's objective good faith the only relevant factor. *Bothke I,* 713 F.2d at 1414 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), for the proposition that "government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known").

According to the court's analysis in *Bothke I,* Bothke claimed that Terry did not meet *Harlow*'s objective standard because she failed to follow statutory procedures even though Bothke had twice warned her that she was proceeding illegally. *Id.* at 1414. While Bothke's complaint alleges that the IRS failed to provide him with a notice of deficiency pursuant to 26 U.S.C. §§ 6212(a) and 6213(a), the panel accepted arguendo the IRS's contention that Bothke had only been entitled to a notice of mathematical or clerical error. *Id.* The panel observed, however, that even under the IRS's theory of the applicable statutory procedure, Bothke had responded to the "Correction to Arithmetic" well within sixty days, and the IRS had failed to construe his letter of protest as a request for an abatement. *Id.* The panel also noted that § 6213(b)(2) "does not require that the taxpayer put a legal classification on his protest," and concluded that "[i]t seems the IRS proceeded illegally even under its interpretation of the proper procedure to use for [Bothke's] tax return." *Id.*

Based on the appellate record in *Bothke I,* it was unclear to the panel what documents other than the TDA had been available to Terry when she levied on Bothke's wages. *Id.* at 1408, 1415. In remanding to the district court, the panel suggested that if Terry had seen Bothke's March 15 pro-

---

**5.** Bothke also named his former employer and two of its employees as defendants, but all three parties were dismissed from the action almost immediately.

test letter or was aware of its substance, "it is questionable whether she can meet the objective good faith standard" articulated in *Harlow*. *Id.* at 1414–15.

### 2. *Bothke II.*

On Terry's appeal to the Supreme Court, *Bothke I* was vacated and the case was remanded for further consideration in light of *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). *Terry v. Bothke*, 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984). In relevant part, *Davis* held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." *Davis*, 468 U.S. at 194, 104 S.Ct. at 3019. Thus, the flaw in the reasoning of *Bothke I* was that the panel examined Terry's qualified immunity in a *Bivens* action by looking to see if she had violated Bothke's clearly established statutory rights. The inquiry should have focused on whether Terry had violated Bothke's clearly established constitutional rights. Upon the Supreme Court's remand, we in turn remanded to the district court with instructions to dismiss the action "unless ... Bothke can meet the burden of showing a violation of constitutional rights that were clearly established at the time of the conduct at issue." *Bothke v. Fluor Engineers & Constructors, Inc.*, 739 F.2d 484 (1984) (*Bothke II*).

### 3. *On Remand to the District Court.*

On remand, the district court appointed a magistrate who heard testimony and considered exhibits and declarations submitted by the parties. Agent Terry testified that, although she never saw Bothke's return, she believed that there had been a valid assessment and that Bothke had not been entitled to a notice of deficiency. She admitted that she had seen Bothke's March 15 protest letter, as well as his June 14 letter in which he had requested a hearing. However, she thought Bothke's objections were meritless, and she interpreted the March 15 letter as a general protest against the IRS rather than a request for an abatement. Terry proceeded with the levy on the basis of T.DA, the "Correction to Arithmetic," and the letters that Bothke had written. She admitted receiving Bothke's "Objection to Notice of Levy" before the levy was executed, and conceded that she could have stopped the levy if she had believed Bothke's objections had merit.

The magistrate first relied on *Rutherford v. United States*, 702 F.2d 580 (5th Cir.1983), to conclude that Bothke had a *Bivens* cause of action,[6] then relied on *Davis v. Scherer* to conclude that Terry was entitled to assert qualified immunity. He noted that Bothke's March 15 protest letter did not expressly request an abatement. Given "the unfocused nature" of Bothke's letter and "the absence of any case law or statute that established that an IRS agent must treat a 'protest' letter as a request for abatement," the magistrate found that Terry "was acting reasonably and well within her discretionary authority" and "was not violating any *clearly* established constitutional right when she

---

6. In *Rutherford,* the taxpayers alleged that an IRS agent had willfully and maliciously harassed them with unreasonable demands for documentation, had assessed them with unjustified tax assessments, and had issued an audit report that resulted in an erroneous deficiency assessment of over $30,000. The plaintiffs alleged that the IRS agent's conduct caused them severe mental anguish and forced them to sue for a refund. *Rutherford,* 702 F.2d at 581–82. The Fifth Circuit acknowledged that the existence of post-deprivation remedies generally satisfies the constitutional requirements of due process for deprivation of property. However, *Rutherford* construed the plaintiffs' complaint as one seeking damages for the mental anguish and grief that the IRS agent had intentionally caused them and as thus alleging deprivation of "a liberty interest derived from and protected by the substantive aspects of the due process clause." *Id.* at 583. Because "statutory mechanisms for refund make no allowance for mental anguish caused by harassment," and because no other judicial or administrative remedies appeared to satisfy the plaintiffs' right to due process with respect to the alleged violation of their constitutional rights, the Fifth Circuit suggested that the plaintiffs might have a *Bivens* action. *Id.* at 584. Relying on *Rutherford,* the magistrate concluded that Bothke had a *Bivens* action because his claim was based on the Terry's conduct in levying on his wages and failing to treat his protest letter as a request for abatement.

failed to treat the letter as a request for abatement."

The district court adopted the magistrate's findings and conclusions of law and entered summary judgment in favor of Terry.

## STANDARD OF REVIEW

This court reviews de novo the district court's dismissal of a *Bivens* action on the ground that the defendant has qualified immunity. *Chilicky v. Schweiker*, 796 F.2d 1131, 1137 (9th Cir.1986), *cert. granted,* — U.S. —, 108 S.Ct. 64, 98 L.Ed.2d 28 (1987); *Augustine v. McDonald*, 770 F.2d 1442, 1445 (9th Cir.1985). We must determine "whether there is a genuine issue of material fact, and, if not, whether the moving party is entitled to judgment as a matter of law." *Simon v. United States*, 756 F.2d 696, 697 (9th Cir.1985). We may affirm on any basis in the record. *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir.), *cert. denied*, 476 U.S. 1111, 106 S.Ct. 1962, 90 L.Ed.2d 648 (1986).

## DISCUSSION

### 1. *The Bivens Issue.*

We expressly decline to consider whether Bothke has stated a *Bivens* cause of action. We have jurisdiction, may affirm on any basis in the record, and Terry's qualified immunity disposes of Bothke's claims in their entirety. *See Augustine*, 770 F.2d at 1445 & n. 2 (assuming arguendo that plaintiff stated a *Bivens* claim and affirming district court's entry of summary judgment on basis of defendants' qualified immunity).

We think the concurring opinion construes Bothke's pro se complaint much too strictly,[7] and misinterprets the nature of Bothke's action. Bothke is not claiming a constitutional right to a pre-levy hearing.[8] Bothke's claim is that he twice warned Terry that she was proceeding illegally, but that she nonetheless "unlawfully and maliciously circumvented" his statutory right to a pre-levy hearing "in bad faith [and with] bad motive" by serving a "spurious" levy and inducing his employer to deprive Bothke of his property. It is clear from

---

**7.** "The allegations of a pro se complaint will be construed liberally." *King v. California*, 784 F.2d 910, 912 (9th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987).

Seven years after Bothke's complaint was filed, and after this court has just put the parties through over four years of litigating the qualified immunity issue, the concurring opinion now chooses to address the technical merits of Bothke's complaint. In support of its approach, the concurrence incorrectly claims that the district court below "held that Bothke stated a *Bivens* cause of action." Concurring Opinion at 814. Neither the magistrate nor the district court ever addressed the adequacy of Bothke's complaint. Rather, based on their view of the evidentiary record, they concluded that Bothke's *Bivens* action withstood a motion for summary judgment. Nothing in the record suggests that Terry challenged the sufficiency of Bothke's complaint below, and she has not raised the issue on this appeal. Thus, Bothke has received no notice that the adequacy of his complaint might be passed upon in this appeal.

In subjecting the complaint to a meticulous grammatical dissection, the concurrence appears to acknowledge that Bothke was attempting to plead an abusive tax practice and even concedes that Bothke "might have pleaded abuse by Terry" by rearranging his allegations. *Id.* at 815 n. 3. Nonetheless, the concurrence

would apparently not afford Bothke an opportunity to amend. We find the approach to be unduly harsh, particularly in light of Bothke's pro se status and the long history of this case.

**8.** In *Bothke I*, the panel devoted a footnote to Terry's claim that Bothke's complaint failed to state a *Bivens* action. *Bothke I*, 713 F.2d at 1405 n. 7. The court observed that "[s]ummary collection procedures have been upheld against due process arguments where the taxpayer had a opportunity for a post-seizure notice and hearing." *Id.* The court noted, however, that Bothke's complaint was not an attack the IRS's procedures, but rather was attack on Terry's "acts which allegedly bypassed statutory procedural safeguards." *Id.*

The court's comment in *Bothke I* must be read with caution. While the remainder of the opinion is devoted to an incorrect analysis of the qualified immunity issue, footnote 7 is addressed only to the sufficiency of Bothke's complaint. The verb "bypass" denotes *intentional* action. Liberally construed, Bothke's complaint alleges that Terry acted intentionally, maliciously, and in bad faith to deprive him of his statutory and constitutional rights. We do not read footnote 7 in *Bothke I* to suggest that a plaintiff has a *Bivens* action simply because an IRS agent in good faith neglects to follow statutory procedures.

both the complaint and the lengthy record[9] that Bothke has been proceeding in this litigation under the theory that Terry intentionally and maliciously bypassed his statutory right to a pre-levy hearing. To now dispense with Bothke's complaint on the ground that he "has no *constitutional* right to a pre-levy hearing" is to ignore the substance of his allegations—allegations that we are compelled to construe liberally.

In contrast to the concurrence's position, the previous courts to consider this case have apparently concluded that Bothke's complaint raises the issue of Terry's subjective good faith. In *Bothke I,* the court observed that the district court's decision below "reflect[ed] a determination that Terry acted with subjective good faith." *Bothke I,* 713 F.2d at 1413. It also concluded that "[t]he district court's findings of [Terry's] subjective good faith survives the clearly erroneous test." *Id.* at 1415 n. 5. The problem of course is that, on Terry's motion for summary judgment, the district court was not entitled to make findings of fact, and the panel in *Bothke I* erred in applying the "clearly erroneous" test of Fed.R.Civ.P. 52(a) to the district court's entry of summary judgment pursuant to Fed.R.Civ.P. 56.[10]

At this stage of the proceedings, we think there is little to be gained by parsing Bothke's complaint to determine if he has set forth allegations sufficient to withstand a motion for failure to state a claim. By addressing the qualified immunity issue, we can dispose of this case without addressing Bothke's allegations of Terry's subjective intentions, and we can focus instead on the objective reasonableness of her actual conduct. We need not reach the sufficiency of Bothke's complaint to resolve this case, and we choose not to.[11]

### 2. *Terry's Right to Assert Qualified Immunity.*

■ Our task in assessing Terry's right to assert qualified immunity in this case is well-defined. Her discretionary acts as an IRS revenue officer are "shielded from liability for civil damages insofar as [her] conduct does not violate clearly established ... constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Terry does not lose her qualified immunity in this *Bivens* action merely because her failure to construe Bothke's March 15 protest letter as a request for abatement may have violated Bothke's statutory rights under 26 U.S.C. § 6213(b). *Davis v. Scherer,* 468 U.S. at 194, 104 S.Ct. at 3019.

While Bothke's complaint casts aspersions on Terry's motivations, our analysis of Terry's right to assert qualified immunity focuses on "the objective reasonableness

---

9. As observed by Terry's counsel at the summary judgment hearing below, Terry "has been subjected to outrageous remarks in the pleadings against her" and "has been accused of perjury, or conspiracy, for four and a half years."

10. This case provides a good example of why the Supreme Court has adopted a purely objective test for the availability of qualified immunity. Prior to *Harlow,* qualified or "good faith" immunity had both an "objective" and "subjective" aspect, with the "subjective component refer[ring] to 'permissible intentions.'" *Harlow,* 457 U.S. at 815, 102 S.Ct. at 2736 (quoting *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975)). *Harlow* acknowledged, however, that the subjective component of the test had "proved incompatible" with the policy that insubstantial claims against government officials should not proceed to trial. *Id.* 457 U.S. at 815–16, 102 S.Ct. at 2736–37. Some courts have regarded an official's subjective good faith to be a "question of fact ... inherently requiring resolution by a jury" and thus an inappropriate issue for summary judgment. *Id.* at 816, 102 S.Ct. at 2737. In *Harlow,* the Supreme Court reasoned that "bare allegations of malice should not suffice to subject government officials" to the burdens of trial or extended discovery, *id.* at 816–17, 102 S.Ct. at 2737, and concluded that the issue of qualified immunity should turn only on "the objective reasonableness of an official's conduct," *id.* at 818, 102 S.Ct. at 2738.

11. For a number of reasons, not the least of which are (1) the apparent discrepancies between Bothke's allegations and the actual facts, (2) the confusion engendered in the complaint and the record by Bothke's miscomprehension of statutory procedures of the tax code, and (3) Bothke's own culpability in this unfortunate episode, the majority does not find this case to be a satisfactory vehicle for charting the parameters of substantive due process and the availability of *Bivens* actions in the context of alleged abuses by IRS agents.

of [her] conduct." *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738. Her "subjective beliefs" about the lawfulness of her conduct are "irrelevant." *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987). "[A]s long as [Terry's] actions could reasonably have been thought consistent with the rights they are alleged to have violated," Terry is immune from civil damages liability. *Id.* at 3038. Moreover, the constitutional rights allegedly violated must have been " 'clearly established' " in a "particularized" sense. *Id.* at 3039. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.*

■ Bothke does not have a constitutional right to a pre-levy hearing. *See Phillips v. Commissioner*, 283 U.S. 589, 593–601, 51 S.Ct. 608, 610–13, 75 L.Ed. 1289 (1931). However, a line of cases dating back to at least 1979 suggests that Bothke does have a constitutional right not to be subjected to abusive tax collection practices. *See, e.g., Hall v. United States*, 704 F.2d 246, 249 n. 1 (6th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983); *Rutherford*, 702 F.2d at 584; *Seibert v. Baptist*, 599 F.2d 743 (5th Cir.1979), *reversing on rehearing* 594 F.2d 423 (5th Cir.1979), *cert. denied*, 446 U.S. 918, 100 S.Ct. 1851, 64 L.Ed.2d 271 (1980). But even in 1983, some four years after the events at issue in this case, the specific contours as well as the nature of that right were far from settled. In *Rutherford*, the case relied upon by the magistrate below, the plaintiffs alleged that the IRS agent engaged in intentional acts of misconduct and harassment far more egregious than those alleged by Bothke. The Fifth Circuit, however, was unwilling sua sponte to hold that plaintiffs had stated a *Bivens* claim for abusive tax practices. Rather, the court remanded the case to the district court for a determination "whether the substantive aspects of the due process clause actually does create in taxpayers a liberty interest in freedom from abusive behavior of the kind, degree and effect as that attributed to [the defendant tax agent.]" *Rutherford*, 702 F.2d at 584.

■ For the purposes of this discussion, we give Bothke the benefit of the doubt. We assume arguendo that in 1979 Bothke had a clearly established constitutional right not to be subjected to abusive tax practices so egregious that they would violate his constitutionally protected "liberty" interests. We further assume arguendo that his complaint alleges facts amounting to what was a clearly established abusive tax practice in 1979.

■ In addressing the qualified immunity issue, the court below, as have the parties in their briefs, focused on whether it was objectively reasonable for Terry to construe Bothke's March 15 letter as a general protest against the IRS rather than as a request for abatement. While our focus is the same, we do not believe that Terry's right to assert qualified immunity necessarily requires a finding that her conduct was objectively reasonable. If Bothke had a clearly established constitutional right to have his March 15 letter construed as a request for abatement, then Terry's right to assert qualified immunity would depend on the objective reasonableness of Terry's failure to so interpret the letter. However, Bothke has no such constitutional right. If he has a constitutional claim at all, it is a *Rutherford* claim to be free from conduct by IRS agents that is so egregious that it deprives him of a constitutionally protected "liberty" interest. Thus, even if it was objectively unreasonable for Terry not to construe Bothke's letter as a request for abatement, that does not mean that her conduct was so egregious as to violate Bothke's constitutional rights.

Bothke's tax return was processed in Fresno, and Terry had nothing to do with the determination that Bothke was entitled to only a "Correction to Arithmetic" rather than a notice of deficiency. Terry read Bothke's March 15 protest letter, but the objections Bothke raised in the letter were in large part frivolous. He devoted numerous paragraphs to the contention that his constitutional rights had been violated because the "Correction to Arithmetic" had not been signed by an IRS official. Bothke

argued that the document was "void" because "some figures show no dollar mark." Bothke contended that the penalty assessment in the "Correction to Arithmetic" constituted an impermissible sanction on his constitutional rights. However, given the frivolous nature of Bothke's constitutional claims in the March 15 letter and his other correspondence, it was not unreasonable for Terry to disregard his contentions. *See Edwards v. Commissioner*, 680 F.2d 1268, 1271 n. 1 (9th Cir.1982) (the taxpayer's assertion of misguided constitutional objections does not protect a taxpayer from liability for statutory penalties for failure to file a meaningful tax return).

Nor did Bothke do anything to clarify matters in his subsequent communications with Terry. In his phone conversation with Terry on November 21, he only repeated his generalized complaints that the IRS was committing perjury and violating his rights. In his "Objection to Notice of Levy," received by Terry on November 29, Bothke contended that the levy was unlawful because he had not been served with a notice of deficiency. Terry, however, had no reason to believe that Bothke was entitled to such a notice, for the Fresno IRS center had concluded that Bothke was only entitled to a "Correction to Arithmetic." Moreover, the remainder of Bothke's objections were frivolous.

Terry discussed Bothke's objections and showed Bothke's correspondence to her superiors, and they concluded that Bothke's objections were without merit.[12] Bothke's complaints in his March 15 letter are for the most part unfocused, frivolous, and so generalized as to be meaningless. He failed to clarify his specific objections when Terry contacted him. His correspondence reflects a combative and litigious attitude hardly calculated to advance his dispute with the IRS toward a rational resolution. Given these factors, we do not think that

Terry was objectively unreasonable in construing Bothke's March 15 protest as a general diatribe directed at the tax system rather than as a request for abatement. Her conduct was certainly not egregious. Terry is entitled to assert qualified immunity.

## CONCLUSION

For the foregoing reasons, the district court's entry of summary judgment in favor of defendant Terry is affirmed.

BEEZER, Circuit Judge, concurring:

Taxpayer Bothke brought this *Bivens*[1] action against Revenue Agent Terry for damages due to Terry's allegedly wrongful levy on Bothke's wages. Bothke claims that Terry violated due process when she levied on Bothke's wages without first affording him a hearing on his tax liability. The district court held that Bothke stated a cause of action for constitutional violations, but that Terry acted within the scope of her qualified immunity. The court granted summary judgment for Terry.

Because Bothke has no constitutional right to a pre-levy hearing, I concur in the judgment on the basis that Bothke does not state a cause of action under *Bivens*. Accordingly, I would vacate the judgment and remand with instructions to dismiss the action for failure to state a claim upon which relief can be granted.

## I

Bothke filed a timely tax return for 1977 claiming a refund for taxes withheld during that year. On March 5, 1979 the IRS sent Bothke a notice of "Correction to Arithmetic" stating that Bothke owed taxes based on the W–2 form attached to his return. The notice also advised Bothke to "[p]lease let us know if you believe the

---

12. Terry also saw Bothke's letter of June 14, 1979, in which Bothke repeated his allegations that the IRS was violating his constitutional rights and requested a hearing with the IRS. However, Bothke did not request an abatement, and in any event, his June 14 letter was not mailed within the sixty-day period for making such a request. *See* 26 U.S.C. § 6213(b)(2)(A)

(1982). Moreover, an IRS hearing was not the process due Bothke under any interpretation of the relevant statutory provisions.

1. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

balance due is incorrect for reasons other than uncredited payments."

Bothke promptly mailed a letter protesting the notice on various grounds. The IRS subsequently notified Bothke that his refund claim had been denied and that his wages would be subject to levy unless he either paid his delinquent tax or contacted the IRS within 10 days.

Terry contacted Bothke in November of 1979. Bothke repeated allegations that the IRS had violated his rights. Terry demanded full payment and told Bothke he could expect further action. Two days later, Terry served a Notice of Levy on Fluor Engineers (Bothke's employer). Fluor paid the IRS approximately half of Bothke's delinquent tax. Bothke terminated his employment with Fluor in order to avoid further levies. Bothke sued Terry and others, claiming violation of his federal constitutional and statutory rights. All defendants other than Terry were dismissed.

Taxpayers who receive notices of correction to their arithmetic may request an abatement of enforcement proceedings. 26 U.S.C. § 6213(b)(2).[2] Requests for abatement permit the taxpayer to avail himself of deficiency procedures, including *inter alia* an opportunity for redetermination of tax liability by the Tax Court before collection of delinquent taxes.

Bothke claims that Terry's failure to regard his protest letter as a request for abatement deprived him of process that was due under the Fifth Amendment and of his rights under 26 U.S.C. § 6213. He seeks $100,000 for compensatory and $150,000 in punitive damages.

The extended procedural history of this case may be summarized as follows:

1. *Initial Adjudication In The District Court*

The magistrate recommended that summary judgment be granted for Terry on the basis of either qualified or absolute immu-

nity. The district court adopted the magistrate's recommendation and directed that judgment be entered for Terry.

2. *Prior Appeal*

This Court affirmed in a memorandum disposition. No. 81–5457 (January 24, 1983). Subsequently, the panel withdrew the memorandum, held that Terry was entitled only to qualified immunity, and vacated the portion of the judgment based on absolute immunity. *Bothke v. Fluor Engineers and Constructors, Inc.*, 713 F.2d 1405 (9th Cir.1983) (*Bothke I*). *Bothke I* suggested, but did not hold, that Bothke stated a cause of action for "acts which allegedly bypassed statutory procedural safeguards...." *See Bothke I,* 713 F.2d at 1415, n. 7.

The Supreme Court granted certiorari, vacated the judgment, and remanded for further consideration in light of *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). *Terry v. Bothke*, 468 U.S. 1201, 104 S.Ct. 3566, 82 L.Ed.2d 867 (1984). *Davis* states that, in order to prevail against a defense of qualified immunity, plaintiffs must show that government officials violated rights which were clearly established at the time of the conduct at issue. *Davis*, 468 U.S. at 197, 104 S.Ct. at 3020.

This Court remanded the case to the district court with instructions to dismiss the action "[u]nless ... Bothke can meet the burden of showing a violation of constitutional rights that were clearly established at the time of the conduct at issue...." *Bothke v. Fluor Engineers and Constructors, Inc.*, 739 F.2d 484 (9th Cir. 1984) (*Bothke II*).

3. *Further Proceedings*

The magistrate determined that Bothke stated a *Bivens* cause of action under the Fifth Amendment, but that Bothke's right to have the IRS treat his protest letter as a

---

**2.** "(A) ... [U]pon receipt of [a request for abatement], the Secretary shall abate the assessment. Any reassessment of the tax with respect to which an abatement is made ... shall be subject to the deficiency procedures prescribed by this subchapter. (B) [N]o levy or proceeding in court for the collection of such assessment shall be made, begun, or prosecuted during the period in which such assessment may be abated."

request for abatement was not clearly established as required by *Davis*. Given the absence of any precedent requiring IRS agents to treat protest letters as requests for abatement, the magistrate concluded that Terry acted "well within her discretionary authority when she decided to follow through with the levy on [Bothke's] salary."

The district court adopted the magistrate's findings and recommendations and directed entry of summary judgment for Terry. Bothke appeals.

## II

The district court had jurisdiction under the general federal question statute, 28 U.S.C. § 1331. *See Bivens v. Six Unknown Agents*, 403 U.S. 388, 398–99, 91 S.Ct. 1999, 2005–06, 29 L.Ed.2d 619 (1971) (concurring opinion). Summary judgment disposed of all of Bothke's claims against Terry, the only remaining defendant. This Court has jurisdiction under 28 U.S.C. § 1291.

## III

The district court held that Bothke stated a *Bivens* cause of action for Fifth Amendment violations. The existence of a cause of action is a question of law, which this Court reviews *de novo*. *See United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### A. Bivens *Cause of Action*

Under certain circumstances, federal courts may award damages for constitutional violations, despite the absence of any common law or statutory cause of action.

> The federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation. When Congress provides an alternative remedy, it may, of course, indicate its intent, by statutory language, by clear legislative history, or perhaps even by the statutory remedy itself, that the courts' power should not be exercised. In the absence of such a congressional

directive, the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.

*Bush v. Lucas*, 462 U.S. 367, 378, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648 (1983). The Supreme Court has approved a damages remedy for deprivations of due process under the Fifth Amendment. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

*Bivens* actions lie only for violations of rights secured by the Constitution. *See Bivens*, 403 U.S. at 396–97, 91 S.Ct. at 2004–05. The due process clause of the Fifth Amendment protects both substantive and procedural rights, either of which may serve as a foundation for *Bivens* actions.

For purposes of the following discussion, I assume that Terry violated 26 U.S.C. § 6213(b)(2) when she levied on Bothke's wages before Bothke obtained a hearing before the Tax Court. Because Bothke has no *constitutional* right to a pre-levy hearing, his complaint does not state a *Bivens* cause of action for Fifth Amendment violations.

#### 1. *Substantive Due Process*

The Fifth Amendment protects taxpayers' substantive right to be free of abusive tax collection practices. *See e.g. Hall v. United States*, 704 F.2d 246 (6th Cir.1983); *Rutherford v. United States*, 702 F.2d 580 (5th Cir.1983) (claim for malicious prosecution, harassment and mental anguish); *Seibert v. Baptist*, 599 F.2d 743 (5th Cir.1979) (taxpayer sought damages for malicious prosecution, harassment, unlawful seizure of property, mental anguish, and deprivation of due process and equal protection; *see Seibert v. Baptist*, 594 F.2d 423, 427 (5th Cir.1979)).

Concluding that Bothke claimed a constitutional violation, the magistrate and district court relied on *Rutherford v. United States*, 702 F.2d 580 (5th Cir.1983). The magistrate considered *Rutherford* "quite similar" to this case. I disagree.

In that case, the Rutherfords alleged that a revenue agent invented additional gross income, intentionally assessed tax twice on the same income, repeatedly demanded useless documentation, accused the taxpayers of hiding money and even demanded, on one occasion, that Rutherford empty his pockets of money. *Rutherford*, 702 F.2d at 581. Finally, "in the '*coup de grace*,' [the agent] arranged for his audit report to be delivered to the Rutherfords' home at 4:30 p.m. on Christmas Eve." *Id.*

The court found that the Rutherfords had stated a claim for violation of "a liberty interest derived from and protected by the substantive aspects of the due process clause"; the court suggested that a *Bivens* action for damages would be the appropriate remedy for abusive and malicious tax collection practices. *Id.* at 583–84.

Bothke alleges that Terry was guilty of a "malicious abuse of process" in serving a "spurious document" (the levy). The only basis for Bothke's characterization of Terry's conduct as wrongful is that the levy was "spurious." The reason the levy was spurious was that Bothke had not been afforded a hearing on his tax liability. However, the IRS' failure to comply with the statutory process of § 6213 is not *per se* abusive behavior. Even assuming that the IRS should have construed Bothke's protest letter as a request for abatement, nothing in Bothke's complaint suggests that the IRS did so deliberately and with intent to harass Bothke.[3]

This case closely resembles *Zernial v. United States*, 714 F.2d 431 (5th Cir.1983). In *Zernial* the taxpayer claimed that revenue agents violated due process when they levied on wages without first providing a notice of deficiency and the opportunity for a hearing on tax liability. The court held that the taxpayer failed to state a claim upon which relief could be granted: "[the taxpayer] has not suggested that there was

**3.** The broadest allegations in Bothke's complaint are the following:

FIRST CAUSE OF ACTION

\* \* \* \* \* \*

25. By reason of these premises defendant Terry willfully and knowingly issued, executed and delivered a spurious document purporting to have legal force and effect and alleging to be a valid "Notice of Levy" on plaintiff's property, which constitutes a malicious abuse of process under color of federal common law.

26. By reason of these premises it is not within the purview of defendant Terry's duties and responsibilities as an acting group manager for the Internal Revenue Service to violate the Internal Revenue law, specifically Section 6213, nor to deny plaintiff the protection of the Internal Revenue Law more specifically Section 6213, and such actions by the defendant Terry constitute a deprivation of plaintiff's rights, privileges and immunities guaranteed under the federal Constitution, and constitute an action in bad faith, bad motive not authorized by law.

SECOND CAUSE OF ACTION

\* \* \* \* \* \*

18. By reason of these premises, defendant Terry, by issuing, executing and delivering the spurious alleged Notice of Levy to the defendant Myers, as stated in the First Cause of Action in Paragraph 11, unlawfully and maliciously circumvented the Statutory Procedure of the Revenue Law....

Allegation 25 does not suggest that Terry knew the document was "spurious", in violation of Bothke's statutory right to a hearing; allegation 25 only suggests that Terry knew she was delivering the document. That Terry's action "constitutes a malicious abuse of process" is a conclusion, not a pleading of fact.

Allegation 26 compounds different thoughts with the result that it does not suggest Terry acted abusively. Bothke connects Terry's failure to heed section 6213 with her "bad faith, bad motive not authorized by law." If Bothke had severed the second thought from the first he might have pleaded abuse by Terry; for example, Bothke simply might have said, 'Terry acted in bad faith.' As it is, however, Bothke compounds the two thoughts. That Terry's failure to heed section 6213 "constitute[s] an action in bad faith" is not a pleading of fact, but a conclusion that does not follow from the predicate.

Similarly, allegation 18 compounds different thoughts. That Terry "unlawfully and maliciously circumvented" the law "by ... delivering the spurious alleged Notice of Levy" is another conclusion that does not follow from the predicate.

Bothke's other allegations do not suggest that Terry acted abusively. For instance, the complaint recounts objections Bothke made to Terry after she issued the notice of levy. The gist of these objections is that "[t]he arbitrary issuance of form 668–W constitutes a denial of my (plaintiff's) legal remedies which are guaranteed by the Fifth amendment [sic] to the United States Constitution."

any abusive behavior by any of the defendants, so this case is clearly distinguishable from *Rutherford*. The only constitutional claim raised here is one of procedural due process." *Id.* at 435.

Similarly, Bothke alleges violation of procedural, not substantive, due process. *Rutherford* is inapposite. Substantive due process does not furnish a basis upon which Bothke may found his *Bivens* action.

### 2. *Procedural Due Process*

The statutory provision for a refund suit (26 U.S.C. § 7422) satisfies procedural due process, *Bob Jones University v. Simon*, 416 U.S. 725, 746–47, 94 S.Ct. 2038, 2050–51, 40 L.Ed.2d 496 (1974), unless "irreparable injury may result" if the taxpayer is not afforded a pre-enforcement hearing. *Commissioner v. Shapiro*, 424 U.S. 614, 629, 96 S.Ct. 1062, 1071, 47 L.Ed.2d 278 (1976). Bothke suffered no irreparable harm when the IRS denied him a pre-levy hearing.

The statute, 26 U.S.C. § 6213(b)(2), allows for a pre-enforcement hearing upon a taxpayer's request for abatement. However, Congress's decision to afford more than due process for taxpayers does not automatically convert statutory process into constitutional due process. *Zernial*, 714 F.2d at 435; *see Laing v. United States*, 423 U.S. 161, 206, 96 S.Ct. 473, 495, 46 L.Ed.2d 416 (1976) (Blackmun, J., dissenting on other grounds).

Bothke had no constitutional right to a pre-levy hearing on his tax liability. Like the taxpayer's complaint in *Zernial*, Bothke's complaint "demonstrates on its face that he received all of the process to which he was entitled." *Zernial*, 714 F.2d at 435. Accordingly, Bothke has no constitutional basis for a *Bivens* action. *Id.*

### B. *Implied Cause of Action Under 26 U.S.C. § 6213*

The Supreme Court has articulated the standard for determining whether a cause of action may be implied from a statute. [T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.

Instead, our task is limited solely to whether Congress intended to create the private right of action.

*Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979) (citations omitted). Neither the language nor the legislative history of 26 U.S. C. § 6213(b) suggests Congress intended that section to form the basis for private damage actions against the government or government employees. *See generally* H.R.Rep. 658, 94th Cong., 2d Sess. at 288–92, *reprinted in* 1976 U.S.Code Cong. & Admin.News 2897, 3184–88; S.Rep. 938, 94th Cong., 2d Sess. at 374–78, *reprinted in* 1976 U.S.Code Cong. & Admin.News 3439, 3803–3807. Bothke does not have an implied cause of action under 26 U.S.C. § 6213.

Bothke states no cause of action either under 26 U.S.C. § 6213 or under *Bivens* for Fifth Amendment violations. I would vacate the judgment and remand with instructions to dismiss the action for failure to state a claim upon which relief can be granted.